IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| BJ ENERGY SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> EVOLUTION WELL SERVICES, LLC, <br><br> Defendant. | CIVIL ACTION NO. **6:21-CV-00682** <br><br><br> JURY TRIAL DEMANDED |

**BJ ENERGY SOLUTIONS, LLC COMPLAINT FOR
PATENT INFRINGEMENT AND JURY DEMAND**

Plaintiff BJ Energy Solutions, LLC ("BJES") files this Complaint for patent infringement against defendant Evolution Well Services, LLC ("EWS"). This Complaint arises from EWS's unlawful infringement of U.S. Patent No. 9,395,049 (the "'049 Patent"), owned by BJES.

**Parties**

1. Plaintiff BJES is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 2001 Timberloch Place, Suite 350, The Woodlands, TX 77380.

2. Defendant EWS is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 3 Hughes Landing, 1780 Hughes Landing Blvd. Suite 125, The Woodlands, TX 77380. EWS is doing business, either directly or through its agents, on an ongoing basis in this judicial District and has a regular and established place of business in the District, including operations at 1624 East County Road 140, Midland, TX.[1]

---

[1] *See, e.g., Evolution Well Services Announces Opening of Midland, Texas Location*, https://evolutionws.com/evolution-well-services-announces-opening-of-midland-texas-location/.

**Error! Unknown document property name.**

3. EWS may be served with process through its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

**Jurisdiction & Venue**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

5. This Court has personal jurisdiction over EWS in this action because EWS has committed acts of infringement of the '049 Patent within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over EWS would not offend traditional notions of fair play and substantial justice. EWS, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and/or selling products that infringe the '049 Patent.

6. Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b). EWS is registered to do business in Texas and, upon information and belief, EWS has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, importing, offering to sell, and/or selling products that infringe the '049 Patent. EWS has a regular and established place of business in the District, including operations at 1624 East County Road 140, Midland, TX. In particular, on information and belief, EWS uses the accused E Fleet vehicles in this District to provide electric hydraulic fracturing services in the Permian Basin.[2]

---

[2] *See id.*; *Are Electrically Powered Fleets the Future of Fracking?*, https://www.drillingcontractor.org/are-electrically-powered-fleets-the-future-of-fracking-59560 (noting that EWS operates three E Fleets in the Permian Basin).

**Count 1**
(Infringement of the '049 Patent)

7. BJES re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

8. On July 19, 2016, the U.S. Patent & Trademark Office duly and legally issued the '049 Patent entitled "Apparatus and methods for delivering a high volume of fluid into an underground well bore from a mobile pumping unit." A true and correct copy of the '049 Patent is attached as Exhibit A to this Complaint.

9. BJES is the owner of all rights, title, and interest in and to the '049 Patent, including the right to assert all causes of action arising under the '049 Patent and the right to any remedies for the infringement of the '049 Patent. The inventors of the '049 Patent assigned all rights, title, and interest in the inventions and patent application to Baker Hughes Incorporated on August 12, 2013. Baker Hughes Incorporated assigned all rights, title, and interest in the '049 Patent to BJ Services, LLC, on December 23, 2016. BJ Services, LLC, assigned all rights, title, and interest in the '049 Patent to BJES on August 28, 2020.

10. Claim 1 of the '049 Patent recites:

1. A mobile hydraulic fracturing fluid delivery system for pumping high pressure fracturing fluid into an underground well bore at a well site and being transportable between multiple well sites, the mobile hydraulic fracturing fluid delivery system comprising:

> (1) a chassis, said chassis being configured to be transportable between well sites;
>
> (2) an electric motor disposed upon said chassis, said electric motor being electrically coupled to an external electric power source and having first and second opposing ends, said electric motor further having a single drive shaft extending axially therethrough and outwardly therefrom at said first and second opposing ends thereof;

  (3) a first fluid pump disposed upon said chassis, coupled directly to said drive shaft of said electric motor at said first end of said motor and configured to pump fracturing fluid into the well bore;

  (4) a second fluid pump disposed upon said chassis, coupled directly to said drive shaft of said electric motor at said second end of said motor and configured to pump fracturing fluid into the well bore at the same time as said first fluid pump;

  (5) wherein said first and second fluid pumps are axially aligned with said electric motor at said opposing ends thereof, further wherein said drive shaft of said electric motor is coupled to said first and second fluid pumps so that said electric motor is capable of concurrently driving both said fluid pumps;

  (6) at least a first flex coupling engaged with and between said electric motor and said first fluid pump and configured to allow movement of said electric motor and said first fluid pump relative to one another during and without disturbing the operation thereof; and

  (7) at least a second flex coupling engaged with and between said electric motor and said second fluid pump and configured to allow movement of said electric motor and said second fluid pump relative to one another during and without disturbing the operation thereof.

11.  Claim 2 of the '049 Patent recites:

  2. The mobile hydraulic fracturing fluid delivery system of claim 1 wherein said electric motor is configured to drive each said fluid pump regardless of the operation of said other fluid pump.

12.  Claim 3 of the '049 Patent recites:

  3. The mobile hydraulic fracturing fluid delivery system of claim 1 wherein said electric motor has a power rating of 6,000 hp and each of said first and second fluid pumps has a power rating of 3,000 hp.

13.  Claim 6 of the '049 Patent recites:

  6. The mobile hydraulic fracturing fluid delivery system of claim 1 further including a remotely controllable variable frequency drive disposed upon said chassis and electrically coupled to said electric motor, said variable frequency drive configured to control the speed of said electric motor.

14.  Claim 7 of the '049 Patent recites:

>7. The mobile hydraulic fracturing fluid delivery system of claim 6 wherein said variable frequency drive is configured to be electrically coupled to said external electric power source and provide electric power to said electric motor when said external electric power source is disposed at a remote location relative to said chassis.

15. Claim 8 of the '049 Patent recites:

>8. The mobile hydraulic fracturing fluid delivery system of claim 7 wherein said external electric power source is one among a local utility power grid and a gas turbine generator.

16. Claim 13 of the '049 Patent recites:

13. A mobile high pressure fluid pumping unit for pumping high pressure fluid into an underground well bore at a well site and being transportable between multiple well sites, the mobile high pressure fluid pumping unit comprising:

>(1) a chassis, said chassis being configured to be transportable between well sites;

>(2) first and second fluid pump disposed upon said chassis and configured to pump pressurized fluid into the well bore at the same time;

>(3) an electric motor disposed upon said chassis, having first and second opposing ends, a single drive shaft extending axially therethrough and outwardly therefrom at said first and second opposing ends thereof and being configured to concurrently drive both said first and second fluid pumps, said first fluid pump being couple directly to said drive shaft of said electric motor at said first end of said electric motor and said second fluid pump being coupled directly to said drive shaft of said electric motor at said second end of said electric motor;

>(4) at least a first high horsepower elastic coupling engaged with and between said electric motor and said first fluid pump and configured to allow movement of said electric motor and said first fluid pump relative to one another during and without disturbing the operation thereof;

>(5) at least a second high horsepower elastic coupling engaged with and between said electric motor and said second fluid pump and configured to allow movement of said electric motor and said second fluid pump relative to one another during and without disturbing the operation thereof; and

(6) a remotely controlled variable frequency drive disposed upon said chassis and electrically coupled to said electric motor and an external electric power source, said variable frequency drive being configured to provide electric power to said electric motor from said external electric power source and allow the speed of said electric motor to be remotely controlled.

17. Claim 15 of the '049 Patent recites:

15. The mobile high pressure fluid pumping unit of claim 13 wherein said electric motor is configured to drive each said fluid pump regardless of the operation of said other fluid pump.

18. Claim 18 of the '049 Patent recites:

18. Apparatus for pumping high pressure fluid into an underground well bore at a well site and being transportable between multiple well sites, the apparatus comprising:

(1) a mobile chassis, said chassis being configured to be transportable between well sites;

(2) an electric motor disposed upon said chassis, said electric motor being electrically coupled to an external electric power source and having first and second opposing ends, said electric motor further having a single drive shaft extending axially therethrough and outwardly therefrom at said first and second opposing ends thereof;

(3) a first fluid pump disposed upon said chassis, coupled directly to said drive shaft of said electric motor at said first end of said electric motor and configured to pump high pressure fluid into the well bore;

(4) a second fluid pump disposed upon said chassis, coupled directly to said drive shaft of said electric motor at said second end of said electric motor and configured to pump high pressure fluid into the well bore at the same time as said first fluid pump; and

(5) first and second flex couplings engaged with and between said electric motor and said first and second respective fluid pumps and configured to allow relative movement of said electric motor and said first and second fluid pumps during and without disturbing the operation thereof,

(6) wherein said drive shaft of said electric motor is coupled to said first and second fluid pumps so that said electric motor is capable of concurrently driving both said fluid pumps.

19. Claim 19 of the '049 Patent recites:

19. A method of providing a high volume of pressurized fluid from a single mobile high pressure fluid delivery system into an underground well bore, the method comprising:

(1) on a single mobile chassis, positioning first and second high pressure fluid pumps on opposing sides of an electric motor, wherein the fluid pumps and electric motor are axially aligned on the chassis, the electric motor having a single drive shaft extending axially therethrough and outwardly therefrom at its opposing sides;

(2) mechanically coupling the fluid pumps directly to drive shaft of the electric motor at the respective opposing sides of the motor so that the electric motor is configured to simultaneously drive both pumps to pump high pressure fluid into the well bore, the electric motor being configured to drive each fluid pump regardless of the operation of the other fluid pump;

(3) engaging at least a first flex coupling with and between the electric motor and the first fluid pump and configured to allow movement of the electric motor and the first fluid pump relative to one another during and without disturbing the operation thereof;

(4) engaging at least a second flex coupling with and between the electric motor and the second fluid pump and configured to allow movement of the electric motor and the second fluid pump relative to one another during and without disturbing the operation thereof;

(5) electrically connecting a remotely controllable variable frequency drive disposed on the chassis to the electric motor and an external electric power source; and

(6) the variable frequency drive providing electric power to the electric motor from the external electric power source and allowing the speed of the electric motor to be remotely controlled.

20. Claim 20 of the '049 Patent recites:

20. The method of claim 19 wherein the external electric power source is located remotely relative to the chassis, further including electrically coupling the variable frequency drive to the external electric power source with at least one cable.

21. EWS has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claims 1, 2, 3, 6, 7, 8, 13, 15, 18, 19, and 20, of the '049 Patent in violation of 35 U.S.C. § 271(a) because EWS makes, uses,

offers for sale, sells, and/or imports certain products, including within this District, such mobile hydraulic fracturing delivery systems and methods that are implemented in at least the vehicles comprising Evolution Wells Services' E Fleet system. EWS's infringing use of the E Fleet system includes its internal use and testing of the E Fleet system.

22. The E Fleet system satisfies all claim limitations of one or more of the claims of the '049 Patent, including at least claims 1, 2, 3, 6, 7, 8, 13, 15, 18, 19, and 20.

23. For example, the E Fleet system vehicles practice a mobile hydraulic fracturing fluid delivery system comprising a chassis, electric motor, and single drive shaft, with two fluid pumps coupled directly to the single electric motor.³



---

³ *See Latest Frac Fleets Are Tougher, Faster*, The American Oil & Gas Reporter, March 2018, https://www.aogr.com/magazine/frac-facts/latest-frac-fleets-are-tougher-faster (quoting Chris Combs, VP, Evolution Well Services).

[images of E Fleet vehicle showing fluid pumps and electric motor axially aligned on chassis]

24. The E Fleet system vehicles further contain at least two flex couplings engaged between the electric motor and each of the fluid pumps.[4]

1400
1402
DIS-ENGAGEMENT DIRECTION
1406
1404B
PRIME MOVER SIDE
1408
1410
PUMP SIDE
1402
1412

FIG. 14B

[U.S. Patent No. 10,378,326, Fig. 14B; [1412] reflects flex couplings]

[4] *See* U.S. Patent No. 10,378,326, "Mobile fracturing pump tansport for hydraulic fracturing of subsurface geological formations," assigned to Typhon Technology Solutions LLC (the "'326 Patent"), at 20:58-63. A copy of the '326 Patent is attached as Exhibit B. Upon information and belief, Typhon Technology Solutions LLC is an affiliated company of EWS. *See* https://evolutionws.com/intellectual-property/ (listing the '326 Patent as part of EWS's intellectual property).

25.     The E Fleet system vehicles further comprise an electric motor that is configured to drive each fluid pump regardless of the operation of the other fluid pump.[5]

26.     The E Fleet system vehicles further comprise an electric motor with a power rating of 6,000 hp and a fluid pump with a power rating of 3,000 hp each.[6]

27.     The E Fleet system vehicles further comprise a remotely controllable variable frequency drive coupled to an electric motor and an external electric power source.[7]

28.     The E Fleet system vehicles further comprise high horsepower elastic couplings engaged with the electric motor and fluid pumps.[8]

29.     The E Fleet system vehicles further utilize an external electric power source that is one among a local utility power grid and a gas turbine generator.[9]

30.     The E Fleet system vehicles further comprise an electric motor connected to two fluid pumps, capable of concurrently driving both said fluid pumps.[10]

---

[5] The '326 Patent describes "selective engagement and/or disengagement of the first fracturing pump" and "selective engagement and/or disengagement of the second fracturing pump." '326 Patent at 2:25-30.

[6] *See Latest Frac Fleets Are Tougher, Faster*, The American Oil & Gas Reporter, March 2018, https://www.aogr.com/magazine/frac-facts/latest-frac-fleets-are-tougher-faster ("[W]e replace the 2,250- or 2,500 horsepower pump that normally would be on each trailer with two, 3,000-horsepower pumps.").

[7] *See* https://evolutionws.com/ews-features (describing a "motor with on board variable frequency drive"); *id.* (describing connection to a "Turbine Generator" acting as an external power source); *id.* (describing connection to a "Data Van" as an element of "remote control").

[8] *See* '326 Patent at 5:4-10; 20:61-63 (describing motor horsepower and examples of fixed couplings).

[9] *See* https://evolutionws.com/ews-features/ (describing use of a gas turbine generator to power a single electric motor further coupled to two fluid pumps).

[10] *See id.* (describing use of a single electric motor to drive two fluid pumps).

31. EWS has received notice and actual or constructive knowledge of the '049 Patent and the infringing nature of the E Fleet system vehicles since at least the date of service of this Complaint.

32. Since at least the date of service of this Complaint, through its actions, EWS has indirectly infringed and continues to indirectly infringe the '049 Patent in violation of 35 U.S.C. § 271(b). EWS has actively induced product makers, distributors, retailers, and/or end users of the E Fleet vehicles to directly infringe the '049 Patent throughout the United States, including within this Judicial District, by, among other things, advertising and promoting the use of the E Fleet vehicles in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the E Fleet vehicles. Examples of such advertising, promoting, and/or instructing include the documents or videos at:

- https://evolutionws.com/services/
- https://evolutionws.com/ews-features/
- https://evolutionws.com/digital-toolbox/
- https://evolutionws.com/gallery/
- https://www.youtube.com/watch?app=desktop&v=n9CL1qzffb8

33. EWS does so knowing and intending that its customers and end users will commit these infringing acts. EWS also continues to make, use, offer for sale, sell, and/or import the E Fleet vehicles, despite its knowledge of the '049 Patent, thereby specifically intending for and inducing its customers to infringe the '049 Patent through the customers' normal and customary use of the E Fleet vehicles.

34. In addition, EWS has indirectly infringed and continues to indirectly infringe the '049 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or

importing into the United States, the E Fleet vehicles with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing technology or aspects of the products are not a staple article of commerce suitable for substantial non-infringing use.

35. For example, EWS is aware that the technology described above included in the E Fleet vehicles enables the product to operate as described above and that such functionality infringes the '049 Patent, including claims 1, 2, 3, 6, 7, 8, 13, 15, 18, 19, and 20. EWS continues to sell and offer to sell these products in the United States after receiving notice of the '049 Patent and how the products' functionality infringe that patent.

36. The infringing aspects of the E Fleet vehicles can be used only in a manner that infringes the '049 Patent and thus have no substantial non-infringing uses. The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

37. BJES has suffered damages as a result of EWS's direct and indirect infringement of the '049 Patent in an amount adequate to compensate for EWS's infringement, but in no event less than a reasonable royalty for the use made of the invention by EWS, together with interest and costs as fixed by the Court.

## Demand for Jury Trial

38. BJES hereby demands a jury trial for all issues so triable.

## Prayer for Relief

WHEREFORE, BJES requests the that the Court:

(a) enter judgment that EWS infringes one or more claims of the '049 Patent literally and/or under the doctrine of equivalents;

(b) enter judgment that EWS has induced and/or contributed to infringement literally and/or under the doctrine of equivalents and continues to induce and/or contributed to infringement of one or more claims of the '049 Patent;

(c) award BJES damages, to be paid by EWS in an amount adequate to compensate BJES for such damages, together with pre-judgment and post-judgment interest for the infringement by EWS of the '049 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284;

(d) declare this case exceptional pursuant to 35 U.S.C. § 285; and

(e) award BJES its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: June 29, 2021                                  Respectfully submitted,

                                                      By: */s/ Max Tribble*
                                                          Max L. Tribble, Jr.
                                                          State Bar No. 2021395
                                                          Joseph S. Grinstein
                                                          State Bar No. 24002188
                                                          SUSMAN GODFREY L.L.P.
                                                          1000 Louisiana Street, Suite 5100
                                                          Houston, Texas 77002-5096
                                                          Telephone: (713) 651-9366
                                                          Fax: (713) 654-6666
                                                          mtribble@susmangodfrey.com
                                                          jgrinstein@susmangodfrey.com

                                                          Beatrice Franklin *(pro hac vice forthcoming)*
                                                          N.Y. State Bar No. 5348271
                                                          SUSMAN GODFREY L.L.P.
                                                          1301 Avenue of the Americas, 32nd Floor
                                                          New York, New York 10019
                                                          Telephone: (212) 336-8330
                                                          Fax: (212) 336-8340
                                                          bfranklin@susmangodfrey.com

Christopher A. Shield
State Bar No. 24046833
GRAY REED & MCGRAW LLP
900 Washington Avenue, Suite 800
Waco, Texas 76701
Telephone: (254) 342-3000
Fax: (254) 342-3100
cshield@grayreed.com

**COUNSEL FOR PLAINTIFF BJ ENERGY SOLUTIONS, LLC**